**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              **Case No. 4:17-cr-00186 KGB**

**WILLIAM THOMAS MURRY III**                              DEFENDANT

<u>**ORDER**</u>

Before the Court is defendant William Thomas Murry's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) and exhibits (Dkt. Nos. 99, 100).  The government responded in opposition to the motion (Dkt. No. 104).  For the following reasons, the Court denies Mr. Murry's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 99).

**I.      Background**

On January 17, 2020, Mr. Murry pled guilty to possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) (Dkt. Nos. 82, 83).  On September 23, 2020, this Court sentenced Mr. Murry to 57 months of imprisonment in the Bureau of Prisons ("BOP") (Dkt. Nos. 93, 94).

In the pending motion, Mr. Murry states that he should be granted compassionate release and relies primarily on his medical condition and the risks of contracting COVID-19 in an institutional setting (Dkt. No. 99, at 2-3).  Mr. Murry states that he has been diagnosed with cardiac conditions including "Artherosclerotic heart disease of native coronary artery without pectoris; Paroxysmal Atrial Fibrillation; Tachycardia; Palpitations; Hypertension; and Hyperlipedemia." (*Id*., at 3).  Mr. Murry asserts that these cardiac conditions raise significantly his mortality rate should he contract COVID-19 (Dkt. No. 99, at 2-4).  Mr. Murry states that he will not jeopardize public safety and points out that the government stipulated at his change of plea and sentencing

hearings that he is not a risk of flight or a danger to the community (*Id.*, at 4).  Mr. Murry touts his established track record of adherence to conditions during the more than two-years he was released; his participation in sex addiction therapy; and his strong support group (*Id.*).  Mr. Murry also states that his wife is the sole caregiver to his adult daughter who has Cerebral Palsy and that his release would permit him to help take care of his daughter (*Id.*, at 4-5).

Mr. Murry states that he requested relief from the Warden of FCI Texarkana in a letter dated November 30, 2020, but 30 days passed, and the Warden had not responded to his request (*Id.*, at 2).  Therefore, Mr. Murry petitions this Court.  The government does not contest this Court's jurisdiction to resolve the motion.  Instead, the government argues that compassionate release is not warranted in this case (Dkt. No. 104, at 2-10).

## II.    Discussion

This Court has received release requests during the current pandemic that reference the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and that reference what is often referred to as the "compassionate release" provision set forth in 18 U.S.C. § 3582(c)(1)(A).

Section 12003 of the CARES Act presently and temporarily provides for expanded prisoner home confinement under the framework set out in 18 U.S.C. § 3624(c).  *See* CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 515–17 (2020).  The CARES Act places decision-making authority solely within the discretion of the Attorney General and the Director of the BOP.  *See id.*; *accord* 18 U.S.C. § 3624(c)(2).  Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.  To the extent Mr. Murry seeks relief from this Court under the CARES Act, the Court denies his motion.

The Court interprets Mr. Murry's motion to be a request pursuant to the compassionate

release provision of the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–40 (2018) (codified at 18 U.S.C. § 3582).  For the following reasons, the Court denies Mr. Murry's motion for compassionate release.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Once a district court has pronounced sentence and the sentence becomes final, the district court may only reconsider or alter the sentence pursuant to statutory authority.  *See United States v. Addonizio,* 442 U.S. 178, 189–90 (1979).  The compassionate release provision permits a district court to modify a term of imprisonment after it is imposed.  *See* 18 U.S.C. § 3582(c)(1)(A).

Until passage of the First Step Act, under the then-governing statute, only the BOP could seek from a district court compassionate release on behalf of an incarcerated federal defendant for extraordinary and compelling reasons.  The First Step Act amended the statute to authorize defendants to seek compassionate release on their own behalf, provided that the defendant first asks the BOP to do so and exhausts administrative appeals following denial of this request by the BOP.  *See* 18 U.S.C. § 3582(c)(1).  Specifically, an inmate may seek a compassionate release directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).  The BOP may oppose a defendant's motion for compassionate release.  The statute authorizes the district court to grant compassionate release, over the BOP's objection, under certain circumstances.

Although the First Step Act does not define the phrase "extraordinary and compelling," it defers to the United States Sentencing Guidelines, which does set out examples.  The Court acknowledges that this list predates the COVID-19 outbreak.  U.S.S.G § 1B1.13 cmt. n.1.  The examples are:  (1) the defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (2) the defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (3) the defendant's family circumstances include either "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  *Id.*

Mr. Murry asserts that he has serious cardiac conditions that make him more susceptible to suffering serious illness or death if he were to contract COVID-19 (Dkt. Nos. 99, at 2-3; 100-4, at 1-2).  Additionally, he states that a "Psychosexual Examination administered during his treatment program, confirmed by a polygraph exam, found his likelihood of recidivating is 4%"; he is not a threat to the community; he successfully abided by the conditions of release for over two years; he attended weekly therapy and near daily group sessions relating to his sexual addiction; he supported and attended to his disabled adult daughter and elderly mother; and has been employed to support his family (Dkt. No. 99, at 2-3).

The government agrees that Mr. Murry has been diagnosed with underlying heart conditions that have been recognized currently by the Centers for Disease Control ("CDC") as a

risk factor associated with higher risk for contracting or being unable to recover from COVID-19 (Dkt. No. 104, at 4).

In the Court's assessment, Mr. Murry meets neither the minimum age requirement nor the served-time requirement under the Guideline (Dkt. No. 943, at 3-4).  Further, the Court determines that, on the record presented, fear of contracting COVID-19 or of experiencing more intense symptoms than the average person are not extraordinary or compelling enough reasons for release. The Court recognizes Mr. Murry's family circumstances and concerns.  However, these circumstances and concerns, taken alone or together with his medical concerns, do not present "extraordinary and compelling" reasons for release.

Even if Mr. Murry could establish extraordinary and compelling reasons, the Court would deny his request for compassionate release based on consideration of the 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a) factors, all of which the Court has considered.  Specifically, here, the Court considers the nature and circumstances of the offense, the history and characteristics of Mr. Murry, and protecting the public from additional crimes by Mr. Murry.  *See* 18 U.S.C. §§ 3142(g)(1), (4); 18 U.S.C. §§ 3553(a)(1), (2)(c).

Mr. Murry pled guilty to possession of child pornography and was sentenced to 57 months imprisonment in the BOP (Dkt. No. 94).  Mr. Murry self-reported at the BOP on November 30, 2020, and filed his motion for compassionate release less than two months later on January 8, 2021.  Mr. Murry has served less than ten percent of his sentence.  The Court was cognizant of the pandemic and Mr. Murry's medical condition at the time it imposed Mr. Murry's sentence.  The Court understands that Mr. Murry has a release plan, but, based on the record before the Court and for the reasons explained, the Court denies his motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) at this time.

**III.      Conclusion**

Based on the findings of fact and conclusions of law above, the Court denies Mr. Murry's

motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 99).

It is so ordered this 14th day of December, 2021.

_____
Kristine G. Baker
United States District Judge